UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN HANCOCK VARIABLE LIFE, INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) CAUSE NO.: 3:09-CV-430-TS |
| 1st SOURCE BANK, as special administrator of the Estate of Philip Gabriele, RICHARD B. URDA, JR., ESQ., as special master of the Estate of Philip Gabriele, JON ALEX DAWSON, as personal representative of the Estate of Marcella Gabriele, JANET JORDAN, and SCOTT GABRIELE, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

The Plaintiff, John Hancock Variable Life Insurance Company (John Hancock), has filed a Complaint for Interpleader [DE 1], seeking to interplead proceeds from a life insurance policy. Two of the Defendants, First Source Bank and Jon Alex Dawson, have filed motions to dismiss [DE 21 & 26] pursuant to Federal Rule of Civil Procedure 12(b)(1). Both of these Defendants argue that the probate exception to federal jurisdiction applies to this case. First Source additionally argues that if the Court does not find that the probate exception applies, it should nonetheless decline to exercise jurisdiction and dismiss this action, which would then allow the Plaintiff to file its claim in Indiana state court.

**FACTUAL AND PROCEDURAL BACKGROUND**

In May 2002, John Hancock issued a term life insurance policy (the Policy) to Dr. Phillip Gabriele. Under the Policy, benefits in the amount of $2 million (the Death Benefits) would be

payable upon Dr. Gabriele's death. Dr. Gabriele's wife, Marcella Gabriele, was the sole beneficiary of the Death Benefits. John Hancock contends that on June 15, 2009, Dr. Gabriele fatally shot his wife, and then fatally shot himself.

Several matters relating to the Estates of Dr. Gabriele and Marcella Gabriele are pending in St. Joseph County Circuit Court. These include actions to probate Dr. Gabriele's will and administer his Estate, the contesting of Dr. Gabriele's will by Marcella's Estate, and a wrongful death claim filed by Marcella's Estate against Dr. Gabriele's Estate. Marcella's Estate is also open in state court under a separate cause. When First Source, the special administrator of Dr. Gabriel's Estate, filed an inventory of the Estate, it listed the John Hancock life insurance policy for $2 million. The administration of the Estates is ongoing in St. Joseph County Circuit Court, and will include a determination of the competing claims of Dr. Gabriele's and Marcella's Estates.

There are also four competing claims for the Death Benefits. On July 10, 2009, the representative of Dr. Gabriele's estate submitted a claim to John Hancock for the Death Benefits. The Estate of Dr. Gabriele maintains that it is entitled to the Death Benefits because the sole beneficiary predeceased the insured. On August 3, the personal representative of the Estate of Marcella also submitted a claim for the Death Benefits. Her Estate's position is that it is entitled to the Death Benefits because Dr. Gabriele became disqualified for the Benefits when he murdered Marcella. Dr. Gabriele's mother, Janet Jordan, and his brother, Scott Gabriele, have also submitted claims for the Death Benefits.

In light of the four competing claims for the Death Benefits, on September 15, 2009, John Hancock invoked the Federal Interpleader Act, 28 U.S.C. § 1335, and Rules 3 and 22 of the

Federal Rules of Civil Procedure to file a Complaint for Interpleader seeking to deposit the funds of the life insurance policy with the Court. John Hancock maintains that it claims no title to or interest in the Death Benefits, and is ready and willing to pay the Death Benefits to the person or persons entitled to them, but that it is unable to make that determination without exposing itself to double or multiple liability. John Hancock also asks that the Defendants be compelled to determine the competing claims for the Death Benefits through the federal interpleader action.

## RULE 12(b)(1) STANDARD

A case may be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the court lacks jurisdiction over the subject matter. "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998).

When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003). The movant may also use affidavits and other material to support its motion if the complaint is formally sufficient but the movant's contention is that there is in fact no subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (stating that the movant may present evidence to in support of contention that there is in fact no subject matter jurisdiction and "the court is free to weigh the evidence to determine whether jurisdiction has been established"); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("The law is clear that when considering a motion that launches a

factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (quotation marks and brackets omitted). The plaintiff has the obligation to establish jurisdiction by competent proof. *Sapperstein v. Hager*, 188 F.3d 852, 855–56 (7th Cir. 1999). The presumption of correctness accorded to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question. *Id.* at 856.

**DISCUSSION**

John Hancock's Complaint rests federal subject matter jurisdiction upon the provisions of 28 U.S.C. § 1335. The existence of diversity in an interpleader action is determined without regard to the plaintiff-stakeholder's citizenship. Rather, there is sufficient diversity to support federal jurisdiction if claims are adverse to the fund, the claims are adverse to each other, and at least two of the claimants to the fund are citizens of different states. *See* 28 U.S.C. § 1335(a)(1). A review of the John Hancock's Complaint shows that this action meets these requirements, and no party has suggested otherwise.[1]

This Court, therefore, has subject matter jurisdiction over this interpleader action unless the probate exception applies. The United States Supreme Court's most recent decision about the probate exception acknowledged that the exception is not compelled by the Constitution or any federal statute, but is a "judicially created doctrine[ ] stemming in large measure from misty

---

[1] The Plaintiff maintains that it has satisfied § 1332 diversity as well. According to the Complaint, two of the defendants are citizens of Indiana, two are citizens of Georgia, and the Plaintiff is a citizen of Massachusetts. The amount in controversy is $2 million.

4

understandings of English legal history." *Marshall v. Marshall*, 547 U.S. 293, 299 (2006). The Court also observed that, since the inception of the probate exception (and the related "domestic relations exception"), "courts have sometimes lost sight of [their obligation to exercise jurisdiction over cases properly before them] and have rendered decisions expansively interpreting the two exceptions." *Id.* Accordingly, the Court sought both to clarify and to limit the scope of the probate exception, holding that it:

> reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Id.* at 311–12. In other words, "when one court is exercising *in rem* jurisction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Id.* at 312; *see also Markham v. Allen*, 326 U.S. 490, 494 (1946) ("[W]hile a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court, . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.") (citations omitted).That a case is brought pursuant to federal question jurisdiction, as opposed to diversity jurisdiction, does not bar application of the probate exception. *See Jones v. Brennan*, 465 F.3d 304, 305–06 (7th Cir. 2006).

John Hancock's Complaint and the relief it seeks does not involve the probate or annulment of a will. Although Dr. Gabriele's will is being contested in state court, the dispute over who is entitled to receive the Death Benefits does not center on the validity of his will or

5

any part of his will.

John Hancock argues that neither does its Complaint involve the administration of an estate. Rather, it invokes the determination of the proper beneficiary under a life insurance policy, which it submits is a contract matter. The Defendants contend that deciding who is entitled to the Death Benefits "is an act of administering the estates because it is essentially reallocating the property between the two competing estates and between those individuals now claiming entitlement, not only to the [D]eath [B]enefits, but to the estates in general." (Reply Brief 4, DE 29.) The Court finds that the interpleader action is not equivalent to asking this Court to take over the administration of the Estates. As the *Markham* case counsels, merely determining the rights to, as opposed to administering, assets is not proscribed by the probate exception. While the Indiana probate court will be obliged to give full faith and credit to the Court's adjudication of the proper beneficiary, it will continue to administer Dr. Gabriele's and Marcella's estates free from federal interference. Thus, this case will only be barred by the probate exception if it seeks to dispose of property that is already in custody of a state court.

The parties dispute whether this matter involves the disposition of property that is in the custody of the state probate court. John Hancock argues that, under Indiana law, a life insurance policy functions as a will substitute, and policy proceeds paid out pursuant to the policy do not pass under a will or by intestate and are not subject to probate proceedings. It contends that none of the state courts are exercising *in rem* jurisdiction over the *res*, and that John Hancock has retained the $2 million in Death Benefits, which it seeks to deposit with this Court. The Defendants do not dispute that John Hancock retains physical possession of the Death Benefits. First Source contends that, although John Hancock is correct that death benefits paid out under

6

an insurance policy do not pass to the beneficiary under a will or intestate, *see In re Estate of Whitehead*, 718 N.E.2d 1207, 1211 (Ind. Ct. App. 1999), the cases holding this involved living beneficiaries to whom the benefits could be paid. It argues that the circumstances of this case are different from those in which the determination of the proper beneficiary is a contractual issue, and that these differences bring the action within the bounds of the probate exception. First Source explains that this is not a typical case in which one individual dies and the benefits simply pass to another living individual. Instead, two estates have competing interests, with Dr. Gabriele's Estate asserting that because a contingent beneficiary was not listed in the Policy and Marcella predeceased Dr. Gabriele, his Estate is entitled to the Death Benefits. Marcella's Estate, on the other hand, claims that under the Slayer Rule Dr. Gabriele cannot profit from Marcella's death.

Determining which claimants are entitled to the Death Benefits is complicated by the timing of Dr. Gabriele's and Marcella's deaths, as well as Dr. Gabriele's purported involvement in causing those deaths. However, those complications do not change the nature of this action. That two of the competing claims are brought by estates, as opposed to living beneficiaries, does not bring this case within the probate exception to federal jurisdiction. Legal entitlement to the Policy's Death Benefits will be determined in accordance with contract principles, statutes, and the rules of equity. If this Court determines that, of the four competing claims, one of the estates is entitled to the Death Benefits, it will be for that estate to administer the asset. Although the federal court's judgment would be arguably intertwined with and binding on state proceedings, it would not purport to dispose of property in the custody of a state probate court. The Death Benefits are not in the custody of any state court; John Hancock desires to deposit them with the

Clerk of this Court to avoid multiple liability. Although First Source has listed the Policy on a property inventory for Dr. Gabriele's Estate, this merely begs the threshold question of whether his Estate is entitled to the Death Benefits. It does not establish that the state court has assumed jurisdiction over them. If either of the estates is determined to be the proper beneficiary of the Policy, that decision would enlarge the estate with assets not currently within it, and increasing an estate does not fall within the probate exception. *See Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008) ("The suit, though based ultimately on the will, is not within the probate exception to federal jurisdiction. The judgment sought would just add assets to the decedent's estate; it would not reallocate the estate's assets among contending claimants or otherwise interfere with the probate court's control over and administration of the estate.").

The Court finds that it has jurisdiction over this matter that is not otherwise barred by the probate exception. The Court must still consider First Source's alternative argument in favor of dismissing this action, wherein it urges the Court to decline to exercise its federal interpleader jurisdiction in favor of allowing the Plaintiff's claim to be filed in a parallel state court action. The parties do not agree on the appropriate standard of review. However, the Court need not resolve the dispute because, regardless of whether the abstention doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), or a more discretionary standard under which the Court may decline to exercise jurisdiction applies, the Court does not find the Defendant's arguments persuasive. The Defendant maintains that avoiding inconsistent application of the Slayer's Rule is of tantamount importance, but does not explain how allowing the matter to proceed in three separate state court actions would advance

this interest,[2] or, conversely, how allowing the federal court to apply Indiana law to decide the matter in a binding judgment would jeopardize it. Rather, having this Court decide who is entitled to the benefits appears to be the best way to avoid piecemeal litigation. Once it is decided who is entitled to the Death Benefits, the state court can go about its business of distributing it through the estate—if it is one of the estates that is deemed entitled to the Benefits. The Defendant asserts that John Hancock's interest in avoiding multiple claims against it for the Death Benefits can be easily protected in the state court forum, but does not explain how.[3] With regard to judicial economy, the Court notes that the various state court actions involve numerous claims that are not related to the single issue of who is entitled to the proceeds of the Policy. Nothing in the record suggests that this forum would be inconvenient for the parties, or that the interpleader action was intended as anything other than a proper attempt by John Hancock, a neutral stakeholder, to shield itself from liability for paying the wrong party. The Court does not find dismissal warranted under a theory that parallel state actions sufficiently protect the Plaintiff's or claimants' interests.

---

[2] The Defendant maintains that it has moved to consolidate the state court actions, but that the motion has not yet been ruled upon. Even if the current claims are consolidated, the Defendant does not submit that this would prevent new claims from being asserted in separate causes of action.

[3] It is problematic that so little discussion is devoted to this factor. Under the discretionary standard for dismissal of federal interpleader actions to allow parallel state action to forward, it is the existence of ample state procedures available to protect the interests of the stakeholder and all claimants that allows the federal court to decline to exercise jurisdiction. *See Koehring Co. v. Hyde Constr. Co.*, 424 F.2d 1200, 1202–03 (7th Cir. 1970).

## CONCLUSION

For the foregoing reasons, 1st Source Bank's Motion to Dismiss [DE 21] and the Motion to Dismiss [DE 26] filed by Jon Alex Dawson are DENIED.

SO ORDERED on April 16, 2010.

                                              s/ Theresa L. Springmann
                                              THERESA L. SPRINGMANN
                                              UNITED STATES DISTRICT COURT
                                              FORT WAYNE DIVISION